IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LISA TAYLOR,

       PLAINTIFF,

v.

JIM ELLIS ATLANTA, INC.,
James E. ELLIS,
STACEY ELLIS HODGES,
CRAIG PIPIN, AND
LLOYD ALEXANDER.

Defendants.

CIVIL ACTION NO.:

## PLAINTIFF'S COMPLAINT

COMES NOW, Plaintiff, Lisa Taylor ("Plaintiff"), and files her Complaint against the above-named Defendants, and shows this honorable Court, as follows:

### *Introduction*

1.

This is an action of race discrimination pursuant to 42 U.S.C. § 2000e-2(a)(1) (1964) (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991, 42 U.S.C § 1983, and retaliation pursuant to 42 U.S.C. § 2000e-3(a) (1964).

***Jurisdiction***

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.

3.

This Court has jurisdiction over Plaintiff's state law claims, as set forth hereinbelow, under 28 U.S.C. § 1367 pursuant to its supplemental jurisdiction to hear related state law claims.   The state law claims alleged herein arose from a common nucleus of operative fact, are related to the federal law claims such that they form part of the same case or controversy, and the actions would ordinary be expected to be tried in one judicial proceeding.

4.

Defendants are an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

5.

This Court has personal jurisdiction over Defendant Jim Ellis Atlanta, Inc. ("Defendant Jim Ellis").  Defendant Jim Ellis is a for-profit Georgia corporation with its principal place of business located at:  5901 Peachtree Industrial Boulevard, Atlanta, Georgia 30341.

6.

Venue in this district is proper for the Defendants pursuant to 28 U.S.C. § 1391 (b) and (c).

### *Parties*

7.

The Plaintiff is a black female residing in Atlanta, Fulton County, Georgia.

8.

Defendant Jim Ellis is a for-profit Georgia corporation with its principal place of business located at:  5901 Peachtree Industrial Boulevard, Atlanta, Georgia 30341.  Defendant Jim Ellis may be served with summons and process by service by its registered agent at: Rafe Banks, III, Registered Agent, 309 Pirkle Ferry Road, Building F, Cumming, Georgia 30040.

9.

Defendant James E. Ellis ("Defendant Ellis") is the Chief Financial Officer of Jim Ellis Atlanta, Inc. and is a named individual Defendant in this matter.  Defendant Ellis may be personally served with the summons and complaint at the place of his residence, *to wit*:  2530 Southers Circle, Suwanne, Georgia 30024.

10.

Defendant Stacey Ellis Hodges ("Defendant Hodges") is the General Manager of one of the Defendant Jim Ellis Atlanta, Inc. d/b/a/ Jim Ellis Mazda of Atlanta and is a named individual Defendant in this matter. Defendant Hodges may be personally served with the summons and complaint at the place of her residence.

11.

Defendant Craig Pippin ("Defendant Pippin") was a manager with the Jim Ellis Atlanta, Inc. d/b/a Jim Ellis Mazda of Atlanta and is a named individual Defendant in this matter.  Defendant Pippin may be personally served with the summons and complaint at the place of his residence.

12.

Defendant Lloyd Alexander ("Defendant Alexander") is a manager with the Jim Ellis Atlanta, Inc. d/b/a/ Jim Ellis Mazda of Atlanta and is a named individual Defendant in this matter.  Defendant Alexander may be personally served with the summons and complaint at the place of his residence.

## *Statement of Facts*

13.

Plaintiff is a black female who was initially employed by Defendant Jim Ellis at the Jim Ellis Mazda of Atlanta dealership as a sales associate on or about January 28, 2008.

14.

When I began working with Defendant Jim Ellis, the sales manager was John Powers ("Powers").  Powers said to me on or about April, 2011, "I knew my father was right, I should never trust a nigger" in reference to an incident that involved me at work.

15.

I worked with an individual named Jason Grindle ("Grindle"). Grindle reported the discriminatory comment made by Powers to me on June 9, 2009 to Mary Cole, the Human Resources Director, by electronic mail. Grindle inquired into the many complaints against Powers.  No investigation occurred and Grindle was moved into a different position after complaining about discriminatory conduct against Jewish individuals and African Americans.  Grindle then filed a complaint with the Equal Employment Opportunity Commission alleging discrimination.  Plaintiff was interviewed by Defendant Jim Ellis members of management regarding Grindle's

allegations.  Plaintiff noticed that immediately after she indicated a concern about the racially charged hostile work environment, she started being treated differently by members of management.

16.

After Plaintiff participated in the investigation by the EEOC, Defendant Alexander became the subprime finance manager.  Defendant Alexander shared with co-workers the fact that Plaintiff participated in the investigation.  Defendant Alexander would share Plaintiff's payroll information with others.  Defendant Alexander was then promoted and would interfere with sales deals about which Plaintiff was involved which impacted Plaintiff's ability to earn a living.  Defendant Alexander would treat Plaintiff and other African American workers differently.

17.

Grindle was terminated from employment and subsequently filed suit in the case styled:  Jason Grindle v. Jim Ellis, Inc. d/b/a Jim Ellis Mazda Atlanta, in the United States District Court for the Northern District of Georgia, Civil Action File No. 1:11-cv-03680-CAP-CCH.

18.

Grindle alleged in his Complaint that Powers and other members of management frequently used the word "nigger" and called Grindle a "nigger

lover." The Defendant in that case, Jim Ellis, Inc., indicated it was the "Jim Ellis Companies" and entered into a Joint/Consent Motion to Stay Proceeding Pending Arbitration and Memorandum of Law. Grindle also asserted that the Defendant Jim Ellis, Inc. racially discriminated against African American customers.

19.

After Grindle's complaints of systemic and widespread discrimination, and Plaintiff's participation in the investigation, she asked Defendant Alexander sometime in 2012 if it was possible for her to be cross-trained and work as a back- up finance manager. Plaintiff knew of white employees that were cross-trained and were allowed to work as back up finance managers. Plaintiff was told that management would discuss it, but no one ever got back with her.

20.

During Plaintiff's employment, she observed that there were white employees that worked part-time, but were given better finance deals to work than the African American counterpart. A white employee was allowed to work as back up finance manager without the job being posted even though Plaintiff had previously expressed an interest in the position.

21.

Plaintiff also experienced being treated differently when discipline occurred.  Plaintiff observed a white employee use vulgar language toward Defendant Alexander on or about May, 2013, but the white employee was not written up or reprimanded.  Plaintiff, however, faced threats of write ups or was written up.  When Plaintiff questioned why she was disciplined differently, she was told that the white employee was just having a disagreement.  Interestingly, the members of management that wrote up Plaintiff were Defendants Alexander and Pippin.

22.

Defendant Alexander had a conversation with Renande Henry (a Plaintiff in a case filed against these Defendants in another pending case) sometime in 2013.  Defendant Alexander told Ms. Henry that Plaintiff had participated in an EEOC investigation and warned her to "stay away" from Plaintiff.

23.

Renande Henry noticed that Plaintiff was treated differently by management.

24.

Plaintiff also went to lunch one afternoon with Renande Henry and noticed that they were being followed by a white employee of Defendant Jim Ellis. After Plaintiff's complaints of discrimination, Renande Henry was interviewed by Defendant Ellis, sometime in July or August 2013. Renande Henry was interviewed about the complaints made by Plaintiff and told Defendant Ellis and Defendant Hodges about the incident in which Plaintiff and Ms. Henry were followed.

25.

Plaintiff had previously complained to Defendant Hodges about the discrimination, hostile work environment, and preferential treatment for white customers to Defendant Hodges, as required by the Employee Handbook that Plaintiff was provided. Specifically, Plaintiff was provided with an Employee Handbook (revised January 1, 2007). The Employee Handbook provides in pertinent part that "[w]e are an Equal Employment Opportunity employer… The Dealership prohibits discrimination, harassment, and retaliation in employment based on race . . . ."

26.

The Employee Handbook also indicates that "[i]f you have any questions about what constitutes harassing behavior or what conduct is prohibited by this policy, please discuss the questions with your immediate supervisor."

27.

Almost immediately after Plaintiff participated in the investigation into Grindle's claims of discrimination, Plaintiff noticed she was treated more harshly by Defendant Pippin and Alexander.   Specifically, Plaintiff faced the following conduct:

- January 19, 2013 – Plaintiff was threatened with being written up by Defendant Alexander because he claimed she lied about having keys on a key chain;

- March 16, 2013 – Defendant Pippin did not know how to work his computer and yelled at Plaintiff claiming that she should have put the information on his computer.  Defendant Pippin told Plaintiff that she was "weak" and did not know how to sell cars.   When Plaintiff responded that she had been the top sales person for four years, Defendant Pippin told her that he was going to write her up for insubordination;

- May 18, 2013 – Plaintiff was involved in trying to assist another co-worker when she advised Defendant Alexander of the problem.  When Plaintiff reported to work on May 20, 2013, she was told by Defendant Alexander and Hodges that she was disrespectful to Defendant Alexander in front of a customer;

- May 30, 2013 – A customer parked a car in an area where a delivery truck could not get by and Plaintiff and another employee attempted to locate the car's owner.  When Plaintiff was walking out of the show room, the other employee, who is employed as a porter, was walking out the door in front of Plaintiff.  Defendant Alexander, Defendant Pippin, and a white co-worker, Alan Sousa were standing outside. Defendant Pippin yelled at Plaintiff indicating that the porter was not Plaintiff's personal porter.  Plaintiff asked him what she had done wrong, but got no response.   As Plaintiff was walking away, Defendant Alexander yells out, "If you get smart, I will write your ass up."  This comment was made in front of another sales person, Mark Woods, and a customer.  Mark Woods wrote a statement about the incident and reported it to Defendant Hodges.  No corrective action was taken;

- .  He then yelled at Plaintiff charged with being "written up" on or about January 19, 2013.

28.

On or about July 8, 2013, Plaintiff complained to Defendant Ellis about the discrimination she was facing and retaliation for participating in the Grindle investigation.  Plaintiff detailed in writing all the incidents involving disparate treatment and discipline.

29.

Despite reporting the problems, Defendant continued to face retaliation and disparate treatment that has affected her ability to earn an income.  Specifically, Plaintiff has not been given internet leads and preferred white customers with good credit are directed toward white co-workers or sales people.

<u>COUNT I Title VII – Race</u>

30.

Plaintiff realleges and incorporates Paragraphs One through Twenty-nine of the Complaint, as if more fully set forth herein.

31.

Defendants have jointly and severally engaged in intentional race discrimination in the terms and conditions of Plaintiff's employment.

32.

Defendants' conduct violates Title VII.

33.

Plaintiff filed a timely Charge of Discrimination alleging retaliation and race discrimination.  During the EEOC's investigation, Plaintiff retained counsel who sent an amended EEOC Charge of Discrimination and raised the systemic and widespread racial discrimination, among other issues, with the EEOC investigator, Deborah Parks.  Ms. Parks conducted an onsite investigation and interviewed many of Defendants' witnesses.  However, Ms. Parks failed and refused to interview many of Plaintiff's witnesses and indicated that she did not have the time.

34.

Defendants' counsel, Joseph Shelton, was present when Ms. Parks was onsite and conducted the interviews.  Interestingly, Joseph Shelton represented Jim Ellis, Inc. when it represented to a federal court that it was "Jim Ellis Companies" in a purported arbitration against between Grindle and "Jim Ellis Companies."

35.

Defendants' attorney, John Shelton, interacted with Plaintiff, knowing she was represented by counsel, but indicated it was not intentional and he was only inquiring about the whereabouts of Ms. Parks.  Plaintiff was upset by Mr. Shelton's actions and did not believe them to be merely coincidental particularly given her knowledge of Mr. Shelton's representation of Jim Ellis, Inc. during the Grindle matter.

36.

Plaintiff has satisfied all statutory prerequisites for filing this action.

37.

On or about June 9, 2014, Plaintiff received her "Notice of Right to Sue" letter from the EEOC for her Charge of Discrimination. A true and correct copy of the Right to Sue Letter is attached hereto as Exhibit A, and incorporated herein by reference.

38.

Plaintiff filed this action under Title VII within ninety (90) days after receipt of her "Notice of Right to Sue" letter from the EEOC.

39.

Defendants' discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

40.

Defendants actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

41.

Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

COUNT II - Title VII – Retaliation

42.

Plaintiff realleges and incorporates the allegations contained in Paragraphs One through Forty of the Complaint, as if more fully set forth herein.

43.

Plaintiff participated in a protected activity by reporting the discriminatory conduct of the Defendants' employee(s), participated in the investigation into discrimination claims by a co-worker, reported harassing comments made by members of management, and suffered an adverse employment action as a result.  There is a causal connection between

Plaintiff participating in reporting the discrimination and the Defendants' decision to interfere with Plaintiff's ability to earn an income.

44.

Defendants have engaged in intentional retaliation in the terms and conditions of the Plaintiff's employment, including, but not limited to, her salary, promotions, and benefits.

45.

Defendants' conduct violates Title VII.

46.

Defendants' discriminatory conduct have caused Plaintiff to suffer mental and emotional distress entitling her to compensatory damages.

47.

Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights thereby entitling her to punitive damages.

<u>Count III - Violation of  42 U.S.C § 1983</u>

48.

Plaintiff realleges and incorporates Paragraphs One through Forty-seven of the Complaint, as if more fully set forth herein.

49.

Defendants have engaged in intentional race discrimination in the terms and conditions of Plaintiff's employment.

50.

Defendants knew or should have known that their conduct clearly violated established statutory or constitutional rights against discrimination based on race.

51.

Specifically, Defendant Jim Ellis has a widespread and systemic race discrimination problem within the organization that affects not just this Plaintiff, but there are approximately five other former employees with pending Charges of Discrimination and currently unknown African American customers that have faced discrimination, as follows:

(a) Chuck Wallace is employed as General Manager for several of the Defendant Jim Ellis' dealerships. Chuck Wallace uses the word "nigger" on an almost daily basis in reference to African American customers or employees;

(b) Chuck Wallace allowed a member of management to draw a Nazi mustache on a piece of paper, adhere it to his face, and "goose step" like a Nazi through the Jim Ellis Mazda of Marietta

dealership with no corrective action taken against the member of management;

(c) Defendants Ellis and Hodges took no corrective action when Renande Henry reported Defendant Alexander's use of the word "cunt" in reference to Plaintiff;

(d) Chuck Wallace referred to an African American customer, sitting in the Jim Ellis Audi of Marietta dealership, as needing watermelon to compliment the customer's lunch of Church's Fried Chicken;

(e) Chuck Wallace refers to African American male porters as "boy" on a frequent basis;

(f) Chuck Wallace has sexually harassed several female employees at Jim Ellis Mazda of Marietta and advised them that he frequently goes to strip clubs;

(g) Defendant Ellis was made aware of the conduct of Chuck Wallace in regards to race and gender discrimination; yet, Chuck Wallace remains employed and no corrective action has been taken against him;

(h) Defendant Alexander would give customers with preferred credit to white employees while trying to funnel customers with poor credit to African American employees;

(i) Defendant Ellis was made aware that African American employees other than Plaintiff were facing race discrimination. Specifically, Renande Henry noticed that Lenore Shields (African American employee) was treated differently than white employees. On more than one occasion, Defendant Alexander asked Renande Henry how long Ms. Shields was with customers. Defendant Alexander did not ask Ms. Henry how long white employees were with customers. Ms. Shields was also terminated from employment and has a pending Charge of Discrimination;

(j) In June or July 2013, Lenore Shields was denied certain promotion monies that she earned and was told that she had to share those monies with white employees. At no previous time did white employees have to share the promotion monies and Ms. Shields complained to Defendant Hodges. Yet, no corrective action was taken and the monies remain withheld from Ms. Shields;

(k) African American employees at other dealerships were also treated differently – Valerie Mosley previously filed a Charge of

Discrimination due to the use of the word "nigger" and other behavior by members of management, including Chuck Wallace.

(l) Plaintiff avers and believes that, prior to her Charge of Discrimination, Defendant Jim Ellis has had over fifteen complaints of race discrimination of which Defendant Ellis was aware prior to and after Grindle's complaints of discrimination and subsequent suit.

52.

As a result of this discriminatory conduct, Plaintiff suffered lost salary, wages, and benefits in an amount to be proven at trial.

COUNT IV – Disparate Treatment and/or Discipline

53.

Plaintiff realleges and incorporates Paragraphs One through Fifty-two of the Complaint, as if more fully set forth herein.

54.

Defendants have jointly and severally engaged in intentional race discrimination in the terms and conditions of Plaintiff's employment and have engaged in disparate treatment and/or disparate discipline of Plaintiff.

55.

Defendants' conduct violates Title VII.

56.

Plaintiff has been financially and emotionally harmed as a result of the Defendants' joint and several conduct in an amount to be more fully proven at trial.

## COUNT V – RACIALLY CHARGED HOSTILE WORK ENVIRONEMENT

57.

Plaintiff realleges and incorporates Paragraphs One through Fifty-six of the Complaint, as if more fully set forth herein.

58.

Plaintiff has suffered from severe and pervasive race discrimination that is wide spread and systemic throughout the Defendant Jim Ellis organization, as more fully set forth hereinabove.

59.

As a result of the severe and pervasive race discrimination, Plaintiff suffered from a decrease in pay that affected the terms and conditions of her employment.

60.

Plaintiff, as well as other former African American employees and customers of Defendant Jim Ellis, have suffered from the widespread,

systemic, and pervasive race discrimination.  Plaintiff will more fully prove her damages at trial in this matter.

### COUNT VI – VIOLATION OF EQUAL PAY

66.

Plaintiff realleges and incorporates Paragraphs One through Sixty-five of the Complaint, as if more fully set forth herein.

67.

Plaintiff has not been paid commissions, pay, or other benefits of employment the same as white employees because of her race and gender.

68.

Defendants' actions in failing to pay Plaintiff the same as white co-workers is willful, wanton, and a total disregard of Plaintiff's right to equal pay.  As a result, Plaintiff has been damaged in an amount more fully proven at trial.

### COUNT VIII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69.

Plaintiff realleges and incorporates Paragraphs One through Sixty-nine of the Complaint, as if more fully set forth herein.

70.

Plaintiff, as well as other African American employees, have complained about the system and widespread race discrimination by members of management of the Defendant Jim Ellis.

71.

Despite Defendant Jim Ellis' policy prohibiting harassment, Plaintiff and other co-worker, Renande Henry, were followed while at lunch and off the work premises.

72.

Defendant Alexander was allowed to use the word "cunt" when referring to Plaintiff with no corrective action being taken.

73.

Plaintiff, as well as other African American employees of several of the Defendant Jim Ellis' dealerships have faced race discrimination, disparate treatment and pay, disparate discipline, and frequent racist remarks that so shock the conscious of an average and ordinary person.

74.

Defendants jointly and severally were intentionally willful, wonton, and malicious and those actions were directed toward Plaintiff, as well as other African American employees and customers of the various dealerships.

75.

As a direct and proximate result of the willful, wonton, and malicious conduct directed toward Plaintiff, she began suffering from depression and anxiety.   Plaintiff is entitled to recovery against Defendants jointly and severally.

## COUNT IX – NEGLIGENT SUPERVISION AND RETENTION

76.

Plaintiff reincorporates and alleges Paragraphs One through Seventy-five of the Complaint, as if more fully set forth herein.

77.

Defendant Alexander's comments, along with the actions of Defendants Ellis and Hodges, reflect a negligence with the handling and investigation of the claims of discrimination not just by Plaintiff.  In fact, there have been at least seven prior claims of race discrimination against the Defendant Jim Ellis organization.

78.

Despite Defendant Alexander's comments that violate Defendant Jim Ellis' policy against harassment and discrimination, he was allowed to continue supervising Plaintiff.  After Plaintiff complained to Defendants Ellis and Hodges that she felt she was being discriminated against and was

facing retaliation so close in time to her participation in the investigation of Grinder's claims, no further investigation was conducted and no corrective action taken against any members of management.

79.

Defendant Jim Ellis is liable for the actions of its servants because it knew or should have known of the complaints of race discrimination made prior to Plaintiff's complaints, should have taken immediate corrective action as required by its policy, and should have moved to stop the systemic and widespread race discrimination prevalent throughout the organization. Because no such actions have been taken, and Defendant Jim Ellis knew or should have known that its members of management were incompetent, Plaintiff has been harmed as a result of the negligence on the part of Defendant Jim Ellis to stop the harm from occurring.

Count X  – Bad Faith

80.

Plaintiff realleges and incorporates Paragraphs One through Seventy-nine of the Complaint, as if more fully set forth herein.

81.

Plaintiff attempted to resolve her claims prior to filing suit by letter sent to Defendant Jim Ellis, but Defendants flatly rejected Plaintiff's attempts to resolve the discrimination prior to filing suit even though no bona fide controversy exists.   Accordingly, Defendants, jointly and severally, have acted in bad faith and have been stubbornly litigious with regard to the transactions that are the subject of the Complaint.   As such, Defendants are jointly and severally liable to Plaintiff for attorney's fees and costs incurred in prosecuting this action, which amount will be more particularly proven upon trial of this matter.

### Count XI – Punitive Damages

82.

Plaintiff realleges and incorporates Paragraphs One through Eighty-one of the Complaint, as if more fully set forth herein.

83.

Defendants' actions, jointly and severally, demonstrate intentional or willful misconduct, and an entire want of care and/or indifference to consequences, so as to justify an award of punitive damages to Plaintiff, in an amount to be determined at trial.

### *Prayer for Relief*

84.

Wherefore, Plaintiff prays for judgment as follows:

(a) That this Court grant full front pay to the Plaintiff;

(b) That this Court grant full back pay to the Plaintiff;

(c) That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

(d) That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

(e) That the court enter judgment for Plaintiff and against Defendant as to Counts I through XI;

(f) That the Court award Plaintiff damages against Defendants, jointly and severally, as to Counts I through XI;

(g) That this Court award Plaintiff expenses of litigation, including reasonable attorneys' fees,

(h) That this Court grant Plaintiff a jury trial;

(i) That this Court grant Plaintiff all other relief the Court deems just and proper; and

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiff certifies that this document has been prepared using Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Respectfully submitted, this 8th day of September, 2014.

/s/ Rebecca McLaws_____
Rebecca W. McLaws
Georgia Bar No. 350156
Co-counsel for Plaintiff

301 Washington Avenue
Marietta, Georgia 30060
(770) 406-6624
(770) 406-6627 (facsimile)
rebecca@mclawslawgroup.com

/s/ Nicholas D. Chester, Sr.
Nicholas D. Chester, Sr.
Georgia Bar No. 500845
Co-counsel for Plaintiff

362 West Memorial Drive
Dallas, Georgia 30132
(678) 813-1077
nick@chesterlegal.net