IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LISA TAYLOR,

        Plaintiff,

     v.

JIM ELLIS ATLANTA, INC., *et al.*,

        Defendants.

CIVIL ACTION FILE NO.

1:14-cv-02889-ELR-RGV

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Pending before the Court is a motion to compel arbitration, filed by defendants Jim Ellis Atlanta, Inc. ("Jim Ellis"), James E. Ellis, Stacey Ellis Hodges, Craig Pipin, and Lloyd Alexander, collectively referred to as "defendants." [Doc. 8]. Plaintiff Lisa Taylor ("plaintiff") has not filed a response to the motion to compel, so the motion is deemed unopposed. See LR 7.1B, NDGa. For the reasons that follow, it is **RECOMMENDED** that defendants' motion to compel arbitration, [Doc. 8], be **GRANTED**, but their request for attorneys' fees be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 28, 2007, plaintiff signed an application for employment with defendant Jim Ellis, in which she agreed that, if hired, any dispute relating to her employment would be resolved through binding arbitration. See [Doc. 8-1 at 2; Doc. 8-2]. In bold capital letters, the application states:

> I agree that any dispute between me and the company related to my application for employment or my employment, if I am hired, will be resolved through mutually binding arbitration in accordance with the company's arbitration policy and procedure. I understand that I have the right to review the policy and procedure prior to signing this document.

[Doc. 8-2 at 2 (emphasis omitted)].[1]  Plaintiff was subsequently hired by Jim Ellis in January of 2008, [Doc. 1 at 5 ¶ 13], and on February 12, 2008, she signed an "Agreement to Arbitrate" any legal disputes that might arise with her employer, [Doc. 8-1 at 2; Doc. 8-3].  This agreement provides, in relevant part:

> In consideration of the Company's agreement to arbitrate legal disputes, I agree that any dispute of a legal nature arising under federal, state, or local law between me and the Company, including any such claim regarding company property, discrimination, harassment, or any other legal dispute relating to my employment or arising under any labor, employment, or civil rights law, will be subject to final and binding arbitration . . . .  I also understand that . . . this Agreement to Arbitrate . . . will be binding and irrevocable for the Company and me as written, with respect to any claim arising while this Agreement is in effect.

---

[1] The court may "consider evidence outside of the pleadings for purposes of a motion to compel arbitration." Chambers v. Groome Transp. of Ala., Case No. 3:14-CV-237-WKW, 2014 WL 4230056, at *3 (M.D. Ala. Aug. 26, 2014) (citation omitted) (citing Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785-86 (11th Cir. 2008) (per curiam) (unpublished)); see also In re Checking Account Overdraft Litig., 754 F.3d 1290, 1294 (11th Cir. 2014) (describing the standard used to resolve motions to compel arbitration as "summary-judgment-like").  Accordingly, the Court will consider the copies of the written arbitration agreements submitted by defendants with their motion to compel arbitration. See Schriever v. Navient Solutions, Inc., No. 2:14-cv-596-FTM-38CM, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014) (considering written arbitration agreement proffered by party seeking to compel arbitration).

[Doc. 8-3 at 2].[2]  On September 8, 2014, plaintiff filed the instant action against defendant Jim Ellis, along with several individual defendants identified as officers and managers of Jim Ellis, alleging unlawful discrimination and retaliation under Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"),[3] and additional state-law claims of intentional infliction of emotional distress and negligent supervision and retention.  [Doc. 1].  On November 11, 2014, defendants filed the pending motion to compel arbitration, in which they request an order compelling arbitration and dismissing this case, or alternatively, staying judicial proceedings pending the arbitration.  [Doc. 8].  Defendants also seek to recover reasonable attorneys' fees and expenses incurred in bringing their motion to compel. [Doc. 8-1 at 13-14].  As previously noted, plaintiff has not responded to defendants' motion.

## II.  DISCUSSION

### A.    Legal Standard

The arbitration agreement in this case is governed by the Federal Arbitration Act ("FAA").  See Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1303 (11th Cir. 2014)

---

[2]  The January, 2007, and February, 2008, arbitration agreements will be collectively referred to hereinafter as the "arbitration agreement" or the parties' "agreement to arbitrate."

[3]  Plaintiff also alleges discrimination in violation of 42 U.S.C. § 1983.  [Doc. 1 at 1].

(citing 9 U.S.C. §§ 1-2)) ("The FAA applies to all contracts involving interstate commerce."); Wilson v. O'Charley's, LLC, Civil Action File No. 1:14-CV-1983-TWT, 2014 WL 5716295, at *1 (N.D. Ga. Nov. 4, 2014), adopted at *1 (quoting Circuit City v. Adams, 532 U.S. 105, 119 (2001)) (noting that the FAA "applies generally to all employment contracts except those involving 'transportation workers'"). Under the FAA, an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA evinces "a strong federal policy in favor of arbitration." Picard v. Credit Solutions, Inc., 564 F.3d 1249, 1253 (11th Cir. 2009) (per curiam) (citation omitted). "Accordingly, courts 'rigorously enforce' arbitration agreements," id. (citations omitted), and "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" Chambers, 2014 WL 4230056, at *3 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). Federal statutory claims of employment discrimination are also subject to arbitration under the FAA. See Wallace v. Rick Case Auto, Inc., 979 F. Supp. 2d 1343, 1347 (N.D. Ga. 2013), adopted at 1345 (citation omitted) ("'[I]t is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes.'"); Alexander v. Nissan, No. 4:10-cv-270, 2011

WL 1557852, at *1 (S.D. Ga. Apr. 25, 2011) (quoting Bender v. A.G. Edwards & Sons,
Inc., 971 F.2d 698, 699 (11th Cir. 1992) (per curiam)) ("'Title VII claims are subject to
compulsory arbitration.'").

In resolving a motion to compel arbitration, the Court must determine
whether: "(1) there is a valid written agreement to arbitrate; (2) the issue [sought to
be arbitrated] is arbitrable under the agreement; and (3) the party asserting the
claims has failed or refused to arbitrate the claims." Wallace, 979 F. Supp. 2d at 1347
(alteration in original) (internal marks omitted) (citing Lomax v. Woodmen of the
World Life Ins. Soc'y, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002)). To determine
whether there is a binding agreement to arbitrate, the Court "appl[ies] the contract
law of the particular state that governs the formation of contracts." Caley v.
Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005). The law of
Georgia applies here. "The basic requirements for a binding contract under Georgia
law are (1) a definite offer and (2) complete acceptance (3) for consideration." Caley
v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367, 1374 (N.D. Ga. 2004), aff'd, 428
F.3d 1359 (11th Cir. 2005) (citing Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct.
App. 2002)).

**B.     Merits of Defendants' Motion to Compel Arbitration, [Doc. 8]**

The undisputed facts in this case establish that plaintiff has refused to arbitrate her pending claims pursuant to the parties' binding arbitration agreement, and defendants' motion to compel arbitration, [Doc. 8], is therefore due to be granted.  First, the parties' written agreement to arbitrate is a valid and enforceable contract under Georgia law.  Defendant Jim Ellis offered to arbitrate any disputes that might arise between the parties by presenting plaintiff with the January, 2007, and February, 2008, written arbitration agreements, and plaintiff manifested her acceptance of those agreements by signing them.  See [Docs. 8-2 & 8-3]; Bruce v. PharmaCentra, LLC, Civil Action File No. 1:07-CV-3053-TWT, 2008 WL 1902090, at *5 (N.D. Ga. Apr. 25, 2008), adopted at *1 (citation omitted) ("By signing . . . the [arbitration] agreement, [p]laintiff . . . clearly indicated her assent to its terms."); In re Lupica, No. 92-4204, 1994 WL 16005198, at *6 (Bankr. S.D. Ga. Jan. 10, 1994) (citations omitted) ("A basic tenet of Georgia contract law is that a party who signs a contract is presumed to know its contents and undertakes to be bound by its terms[.]").  The agreements are supported by valid consideration because they are based on a mutual promise to submit to binding arbitration, which was also made an express condition of plaintiff's employment.  See [Docs. 8-2 & 8-3]; Caley, 428 F.3d at 1376 (quoting Atlanta Six Flags P'ship v. Hughes, 381 S.E.2d 605, 607 (Ga. Ct.

App. 1989)) ("'[M]utual promises and obligations of the parties constitute[] sufficient consideration for the contract.'"); Wilson, 2014 WL 5716295, at *2 (citation omitted) (finding valid consideration for arbitration agreement under Georgia law where "[d]efendant conditioned [p]laintiff's employment on her signing of the arbitration agreement and made a reciprocal promise to arbitrate").

Second, plaintiff's claims in this action plainly are covered by the arbitration agreement because each of the claims is directly related to plaintiff's employment with defendant Jim Ellis.  See [Doc. 8-2 at 2 (agreeing to submit to arbitration "any dispute . . . related to . . . employment"); Doc. 8-3 at 2 (agreeing to arbitrate "any dispute of a legal nature," including claims of "discrimination . . . or any other legal dispute relating to [] employment")]; Wilson, 2014 WL 5716295, at *2 (finding "no difficulty" in concluding that the parties agreed to arbitrate plaintiff's Title VII discrimination claims as well as claims of intentional infliction of emotional distress and negligence, where agreement provided for arbitration of any employment-related claims or tort claims, and where plaintiff signed agreement in exchange for employment); Stevenson v. Great Am. Dream, Inc., Civil Action File No. 1:12–CV–3359–TWT, 2014 WL 4925597, at *1 (N.D. Ga. Sept. 30, 2014) ("[B]ecause [] [p]laintiffs do not dispute that their claims fall within the scope of the arbitration agreements, [] [d]efendants' Motion to Compel Arbitration and Dismiss must be

granted.").  Finally, plaintiff has refused to arbitrate her claims by commencing the

pending litigation.  See <u>FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc.</u>, 754 F. Supp.

2d 628, 632 (S.D.N.Y. 2010) (<u>quoting</u> <u>LAIF X SPRL v. Axtel, S.A. de C.V.</u>, 390 F.3d

194, 198 (2d Cir. 2004)) ("In a paradigmatic case, '[a] party has refused to arbitrate

if it commences litigation[.]").[4]  Accordingly, because plaintiff has refused to

arbitrate her pending claims, which fall squarely within the broad scope of the

parties' valid and enforceable agreement to arbitrate, § 4 of the FAA requires the

Court to compel arbitration pursuant to the terms of the agreement.  See 9 U.S.C. §

4 ("[U]pon being satisfied that the making of the agreement for arbitration or the

failure to comply therewith is not in issue, the court shall make an order directing

the parties to proceed to arbitration in accordance with the terms of the

agreement.").

## C.  Standing of Non-Signatories to Compel Arbitration

The arbitration agreements in this case identify "Jim Ellis Companies," rather

than defendant "Jim Ellis Atlanta, Inc.," as the employer-signatory to the parties'

agreement to arbitrate.  See [Docs. 8-2 & 8-3].  However, a plaintiff may not avoid

arbitration with her employer after signing an agreement to arbitrate with a related

---

[4] Defendants also represent that plaintiff refused to voluntarily submit her
claims to arbitration even after defendants provided her with copies of the signed
agreement to arbitrate and requested that she dismiss this action and initiate
arbitration proceedings.  See [Doc. 8-1 at 1, 3, 10, 13-14].

entity where the plaintiff's claims against the related entity presume the existence of the employment relationship.  See Wallace, 979 F. Supp. 2d at 1349 (noting that courts use "principles of equitable estoppel to prevent an employee from escaping the arbitration provision in his employment agreement by arguing the agreement was not with the entity that actually employed him").  Thus, notwithstanding any discrepancy between the proper name of the formal entity that agreed to employ plaintiff in exchange for her agreement to arbitrate, defendant Jim Ellis is entitled to enforce the arbitration agreement because plaintiff's claims presume the existence of an employment relationship and it is undisputed that "Jim Ellis Companies" is, at minimum, a closely related entity, see Wallace, 979 F. Supp. 2d at 1347-51 (plaintiffs could not avoid arbitration against named defendant "Rick Case Cars, Inc.," even though "Rick Case Automotive Group" was identified as the signatory in the parties' written arbitration agreements); Garcia v. Mason Contract Prods., LLC, No. 08-23103-CIV, 2010 WL 520805, at *5 (S.D. Fla. Feb. 9, 2010) (citation and internal marks omitted) (observing that where a "signatory to an agreement resist[s] arbitration on technical grounds . . . ., the Eleventh Circuit allows for extension of the [a]rbitration [c]lause to the non-signatory [d]efendants").

Similarly, individual defendants who are not signatories to an arbitration agreement may nonetheless enforce the agreement against the plaintiff when the

plaintiff's claims arise out of alleged "interdependent and concerted misconduct" on the part of the non-signatory defendants and a signatory to the agreement.  See Wallace, 979 F. Supp. 2d at 1350 (individual non-signatory defendant had standing to compel arbitration against plaintiffs where plaintiffs' claims against him were based on misconduct that was closely interrelated to the misconduct of a signatory to the arbitration agreement); Bruce, 2008 WL 1902090, at *6 (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)) ("[W]hen one party, a signatory to an arbitration agreement, raises allegations that another signatory party and a non-signatory party engaged in 'substantially interdependent and concerted misconduct,' the signatory party bringing the claims is equitably estopped from preventing the non-signatory party from arbitrating the claims against it[.]"); Jackson v. Cintas Corp., Civil Action No. 1:03–CV–3104–JOF, 2004 WL 5545444, at *10 (N.D. Ga. Sept. 29, 2004), aff'd, 425 F.3d 1313 (11th Cir. 2005) (per curiam) (individual defendant who did not sign employment-arbitration agreement in his individual capacity still had standing to compel arbitration where the claims against him concerned actions he took within the scope of his employment and in his capacity as agent or representative of the employer-signatory, and where plaintiff's claims against both the employer-signatory and the individual defendant were

based on the same underlying facts).[5]  Plaintiff's claims against the individual defendants in this action are clearly predicated on her allegations that the latter engaged in what amounts to "interdependent and concerted misconduct" with her employer, since each of the individual defendants is alleged to be an agent or officer of defendant Jim Ellis, and plaintiff's claims against all of the named defendants are based on the same facts and circumstances arising out the employment relationship. See, e.g., [Doc. 1 at 2, 20 (alleging that the named "[d]efendants are an employer" under Title VII, and that they have "jointly and severally engaged in [] race discrimination in the terms and conditions of [p]laintiff's employment")]; see also Elder v. BMO Harris Bank, Civil No. –JFM–13–3043, 2014 WL 1429334, at *1 (D. Md. Apr. 11, 2014) (footnote omitted) (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009)) ("Non-signatories to an arbitration agreement . . . may enforce arbitration agreements when . . . the claim is based on conduct which the non-signatory allegedly took as an agent on behalf of the party with which the

---

[5] See also Weiner v. Tootsie Roll Indus., Inc., 412 F. App'x 224, 228 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted) ("Because the [FAA] 'creates a presumption in favor of arbitrability,' the 'parties must clearly express their intent to exclude categories of claims from their arbitration agreement.'"); Hardy v. PSI Family Servs., Inc., No. 3:11-cv-56-J-32JRK, 2011 WL 1344422, at *2 (M.D. Fla. Apr. 8, 2011) (citation omitted) ("[I]n accordance with the strong policy in favor of arbitration, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a  claim falls within the scope of that agreement should be resolved in favor of arbitrability.").

plaintiff agreed to arbitrate.").   Under these circumstances, that the individual defendants in this action were not signatories to the arbitration agreement does not prevent them from enforcing the agreement against plaintiff with respect to plaintiff's arbitrable claims arising from the employment relationship.

## D.    Attorneys' Fees under 28 U.S.C. § 1927

Defendants seek an award of reasonable attorneys' fees and expenses incurred in bringing their motion to compel arbitration, pursuant to 28 U.S.C. § 1927.  [Doc. 8-1 at 13-14].  Section 1927 "provides that '[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'"   Peterson v. BMI Refractories, 124 F.3d 1386, 1395 (11th Cir. 1997) (alterations in original) (quoting 28 U.S.C. § 1927)).  However, "[t]his section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel," Miccosukee Tribe of Indians of Fla. v. Cypress, No. 12-22439-Civ, 2015 WL 235433, at *9 (S.D. Fla. Jan. 16, 2015) (internal marks omitted) (quoting Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003)), and "'[s]anctions are not warranted . . . simply because counsel's performance did not rise to the highest standards of the profession,'" id. at *9 (citation omitted) (quoting Smith v. Grand Bank & Trust of Fla., 193 F. App'x 833, 836 (11th Cir. 2006) (per curiam) (unpublished)); see also Peterson, 124 F.3d at 1395 (citations omitted) (noting that

12

"the provisions of § 1927, being penal in nature, must be strictly construed").

Indeed, unreasonable and vexatious conduct warranting sanctions under § 1927

"occurs 'only when the attorney's conduct is so egregious that it is tantamount to

bad faith[.]'" Wandner v. Am. Airlines, No. 14-22011-CIV, 2015 WL 145019, at *12

(S.D. Fla. Jan. 12, 2015) (quoting Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d

1230, 1239-42 (11th Cir. 2007)); see also Cypress, 2015 WL 235433, at *9 (alteration in

original) (citation and internal marks omitted) ("[S]omething more than a lack of

merit is required; '[b]ad faith' is the touchstone."); Daniels v. Sodexo, Inc., No.

8:10-cv-00375-T-27AEP, 2013 WL 4008744, at *7 (M.D. Fla. Aug. 5, 2013) (citations

omitted) ("[M]ere negligent conduct alone does not support a finding of bad faith

under Section 1927.").

Defendants allege that they provided plaintiff's counsel with a copy of the

parties' signed arbitration agreement and requested that this action be dismissed,

but that plaintiff's counsel has refused to submit the claims to arbitration on the

stated basis that the agreement "does not apply to the parties in this lawsuit[.]" See

[Doc. 8-1 at 3, 13-14]. As previously discussed, none of the defendants, as

designated in this action, appear as signatories on the arbitration agreement, see

[Docs. 8-2 & 8-3], and plaintiff's counsel thus had at least some arguable basis for

contending that the claims brought in this lawsuit are not subject to the parties'

agreement to arbitrate. In any event, there is certainly not sufficient evidence that

13

the refusal by plaintiff's counsel to withdraw the complaint and initiate arbitration, even if based on a flawed legal argument, constituted such egregious misconduct as to amount to bad faith warranting sanctions under the exacting standard of § 1927. Similarly, the Court's finding that plaintiff's claims are ultimately subject to arbitration in this case is based on the merits of defendants' motion to compel, and does not imply any unreasonable or vexatious conduct on the part of plaintiff's counsel. Accordingly, defendants' request for attorney's fees and expenses pursuant to 28 U.S.C. § 1927 is without merit and is due to be denied. See Stephan v. Brookdale Sr. Living Cmtys., Inc., Civil No. 12-cv-00989-LTB, 2013 WL 673292, at *2 (D. Colo. Feb. 25, 2013) (defendant was not entitled to attorney's fees upon successfully moving to compel arbitration since the mere fact that plaintiff's objections to arbitration proved unavailing did not suffice to demonstrate sanctionable misconduct under § 1927); Serv. Emps. Int'l Union, Local 105 v. Mental Health Ctr. of Denver, Civil Action No. 10–cv–01416–CMA–MEH, 2010 WL 2985619, at *3 (D. Colo. July 23, 2010) (citation omitted) (granting motion to compel arbitration while denying movant's request for costs and attorney's fees incurred in bringing the motion, and noting that "fee awards under [§ 1927] are granted 'only in instances evidencing a serious and standard disregard for the orderly process of justice'"); Josie-Delerme v. Am. Gen. Fin. Corp., No. 08-CV-3166 (NG), 2009 WL

2366591, at *5 (E.D.N.Y. July 31, 2009) (granting defendants' motion to compel arbitration but denying their request for fees under § 1927, despite defendants' representation that plaintiff refused to withdraw her complaint after defense counsel sought to enforce the parties' arbitration agreement through conversations with plaintiff's counsel).

## III.  CONCLUSION

For the reasons stated, it is **RECOMMENDED** that defendants' unopposed motion to compel arbitration, [Doc. 8], be **GRANTED**, that their request for attorneys' fees be **DENIED**, and that this action be **DISMISSED**.[6]

The Clerk is **DIRECTED** to terminate this reference.

**IT IS SO RECOMMENDED**, this 27th day of January, 2015.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[6] See Kozma v. Hunter Scott Fin., L.L.C., No. 09–80502–CIV, 2010 WL 724498, at * (S.D. Fla. Feb. 25, 2010) (collecting cases) (noting that the Eleventh Circuit has "frequently affirmed where the district court compelled arbitration and dismissed the underlying case"); Jackson, 2004 WL 5545444, at *10 (citation omitted) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)) ("When all claims in a given action must be submitted to arbitration, the court may dismiss rather than simply stay the case."); see also Nunez v. Citibank, N.A., No. 08 CV. 5398 (BSJ), 2009 WL 256107, at *4 (S.D.N.Y. Feb. 3, 2009) (citation omitted) ("Because all of [plaintiff's] claims must be submitted to arbitration, 'no useful purpose will be served by granting a stay of these proceedings.'").